IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| **TAMARA MUCHIARONE,** | CASE NO. 3:24 CV 1688 |
| Plaintiff, | |
| v. | JUDGE JAMES R. KNEPP II |
| **BOARD OF EDUCATION OF THE TOLEDO CITY SCHOOL DISTRICT, et al.,** | |
| Defendants. | **MEMORANDUM OPINION AND ORDER** |

### INTRODUCTION

Currently pending before the Court is Defendant Carnel Smith's Motion for Leave to File Counterclaim *Instanter*. (Doc. 14). Plaintiff Tamara Muchiarone opposes and requests sanctions. (Doc. 15). Smith replies. (Doc. 16). Also pending is the parties' Amended Joint Motion to Extend Discovery Cut-Off Date as to Liability. (Doc. 18). Jurisdiction in this matter is proper under 28 U.S.C. §§ 1331 and 1367. For the reasons set forth below, the Court DENIES the Motion for Leave and GRANTS the parties' Amended Joint Motion to Extend as set forth below.

### BACKGROUND

Plaintiff filed the instant case on September 30, 2024, naming as Defendants the Board of Education of the Toledo City School District and Carnel Smith. (Doc. 1). Plaintiff, a teacher, alleges Smith, the principal at her school, sexually harassed her. *See id.* She brings claims for sexual harassment, hostile work environment, sex discrimination, and retaliation under Title VII and Ohio state law. *See id.*

On October 29, 2024, counsel entered an appearance for both Defendants, and jointly filed an Answer to the Complaint. (Doc. 5). On November 19, 2024, the Court held a case management conference. (Doc. 8). In its Case Management Conference Order, the Court set December 10, 2024, as the deadline to amend pleadings. *Id.* at 2.

On March 10, 2025, Attorney Norman A. Abood entered an appearance on behalf of Smith "as *additional* trial counsel[.]" (Doc. 11) (emphasis in original).

On April 4, 2025, Attorney Abood filed the currently-pending motion on Smith's behalf. (Doc. 14). In the motion (and attached proposed counterclaim), Smith seeks leave to file a counterclaim to assert an Ohio state-law claim for abuse of process. *See id.*; Doc. 14-1 (proposed counterclaim). Specifically, he seeks to allege that Plaintiff's Complaint in the instant case is not brought for a proper purpose, but is instead intended to injure Smith's reputation and cause him financial, professional, and emotional harm. (Doc. 14-1, at 5-6).

## DISCUSSION

Smith moves for leave to file a counterclaim against Plaintiff for the Ohio state law claim of abuse of process. (Doc. 14). Plaintiff contends amendment is improper for numerous reasons, including that amendment would be futile. (Doc. 15). For the reasons discussed below, the Court agrees with Plaintiff and finds the proposed amendment to add a counterclaim would be futile and denies Smith's motion for leave.

## STANDARD OF REVIEW

Amendment to add a counterclaim is governed by Rule 15 of the Federal Rules of Civil Procedure. *See* Fed. R. Civ. P. 13 advisory committee's note to 2009 amendment ("Rule 13(f) is deleted as largely redundant and potentially misleading. An amendment to add a counterclaim will be governed by Rule 15."); Fed. R. Civ. P. 15 advisory committee's note to 2009

2

amendment ("Abrogation of Rule 13(f) establishes Rule 15 as the sole rule governing amendment of a pleading to add a counterclaim."). After a party's right to amend its pleading as a matter of course expires, a party may amend only with the opposing party's written consent or leave of court. Fed. R. Civ. P. 15(a). Under Rule 15(a)(2), courts "should freely give leave when justice so requires."

The appropriate factors to consider in determining whether to permit an amendment include: "the delay in filing, the lack of notice to the opposing party, bad faith by the moving party, repeated failure to cure deficiencies by previous amendments, undue prejudice to the opposing party, and futility of amendment." *Perkins v. Am. Elec. Power Fuel Supply, Inc.*, 246 F.3d 593, 605 (6th Cir. 2001). A district court enjoys "considerable discretion" in determining whether leave should be granted. *Leisure Caviar, LLC v. U.S. Fish & Wildlife Serv.*, 616 F.3d 612, 615 (6th Cir. 2010).

In addition to the requirements of Rule 15, Rule 16 provides that a scheduling order establishing deadlines for matters such as amendments to pleadings "may be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4). "Thus, when seeking to amend after the deadline in the scheduling order, the movant must satisfy not only the relatively liberal requirements of Rule 15 but also the more exacting 'good cause' standard of Rule 16." *Snyder v. Erie Ins. Exch.*, 2023 WL 12047213, at *1 (W.D. Tenn.). Unlike Rule 15, Rule 16 also requires diligence by the party seeking amendment. *Smith v. Holston Med. Grp., P.C.*, 595 F. App'x 474, 478 (6th Cir. 2014) ("'The primary measure of Rule 16's "good cause" standard is the moving party's diligence in attempting to meet the case management order's requirements,' though courts may also consider prejudice to the nonmoving party.") (quoting *Inge v. Rock Fin. Corp.*, 281 F.3d 613, 625 (6th Cir. 2002)).

Once a scheduling order's deadline passes, therefore, a party must first show good cause under Rule 16(b) for the failure to seek leave to amend prior to the expiration of the deadline before a Court will consider whether the amendment is proper under Rule 15(a). *Leary v. Daeschner*, 349 F.3d 888, 909 (6th Cir. 2003). A determination of the potential prejudice to the nonmoving party is also required in deciding whether to allow the amendment. *Id.*

Good Cause Under Rule 16

Smith's motion, although recognizing that the proposed counterclaim is filed "out of time", does not cite or reference Rule 16's good cause standard. *See* Doc. 14. Instead, he focuses on the policy of liberal allowance of amendments to pleadings under Rule 15. *Id.* at 3-4. Nor does Plaintiff's response specifically address the Rule 16 standard, instead arguing the factors under Rule 15 that counsel in favor of denial. *See* Doc. 15, at 5-11.

It is Smith's burden, as the party seeking amendment after the scheduling order's deadline, to "show good cause under Rule 16(b) for failure earlier to seek leave to amend before a court will consider whether amendment is proper under Rule 15(a)." *Leary*, 349 F.3d at 909; *Korn v. Paul Revere Life Ins. Co.*, 382 F. App'x 443, 449 (6th Cir. 2010) (holding a party who fails to seek leave to amend a scheduling order deadline must demonstrate good cause for the failure to timely move); *OM Shiv Hosp., L.L.C. v. Northfield Ins. Co.*, 2025 WL 1762288, at *2 (S.D. Ohio) ("The party seeking to amend the scheduling order bears the burden of demonstrating good cause.").

Parties "can demonstrate 'good cause' for their failure to comply with the original schedule . . . by showing that despite their diligence they could not meet the original deadline." *Leary*, 349 F.3d at 907; *see also Marcilis v. Twp. of Redford*, 693 F.3d 589, 597 (6th Cir. 2012) ("A court asked to modify a scheduling order for good cause 'may do so only if [a deadline]

4

cannot reasonably be met despite the diligence of the party seeking the extension.'") (quoting *Leary*, 349 F.3d at 906); *Inge*, 281 F.3d at 625 ("The primary measure of Rule 16's 'good cause' standard is the moving party's diligence in attempting to meet the case management order's requirements"); *O2 Micro Int'l Ltd. v. Monolithic Power Sys., Inc.*, 467 F.3d 1355, 1366 (Fed. Cir. 2006) ("The burden is on the movant to establish diligence rather than on the opposing party to establish a lack of diligence.").

Smith's motion, although recognizing the counterclaim is filed "out of time" (Doc. 14, at 2), provides no excuse or explanation for why this is so. That is, it provides no evidence of why, "despite [his] diligence [he] could not meet the original deadline", or any explanation for the delay. *Leary*, 349 F.3d at 907. Although not citing Rule 16 specifically, Plaintiff points out: "Smith does not point to new facts or recently obtained evidence to support his counterclaim. As a result, there is no reason why the counterclaim was not timely filed." (Doc. 15, at 5). The closest Smith comes to pointing to cause is in reply, where he argues that "Plaintiff offers no analysis of the limits of initial counsel's engagement, or the complexities involved in arriving at an agreeable joint defense agreement to rebut the representation that such limits exist and the time it took to agree upon the terms and conditions of a joint defense agreement acceptable to all involved." (Doc. 16, at 3). Thus, as to cause for the delay, Smith, at most, alludes to the need to obtain additional counsel to represent his interests.

As noted above, new counsel entered an appearance as "*additional*" counsel, not substitute counsel. (Doc. 11). And Smith does not assert prior counsel did not adequately represent him, or that there was a conflict of interest (indeed, Smith is now jointly represented by both attorneys). Given the lack of explanation for the lateness of the proposed amendment, the Court would be inclined to find a lack of good cause to modify the scheduling order. However,

5

because both parties focus their arguments on the Rule 15 factors, the Court proceeds through that analysis.

Leave to Amend Under Rule 15

Both parties focus their arguments on the factors relevant under Rule 15 regarding leave to amend. While Smith focuses on the permissive policy reasons to allow amendment (Doc. 14), Plaintiff responds that the factors of undue delay, bad faith, and futility counsel against amendment (Doc. 15).

At the outset, the Court notes that both parties rely heavily on competing characterizations of the underlying facts and motivations at issue in this case. But the Court's role at this juncture is not to be the arbiter of such facts. Instead, the Court must simply determine the procedural question of whether granting leave to amend is appropriate (and, in evaluating the question of futility, examine only the facts as Smith has stated them in his proposed counterclaim).

*Undue Delay*

First, in arguing undue delay, Plaintiff cites Smith's knowledge of Plaintiff's complaints against him prior to this lawsuit and his participation in this case through counsel prior to additional counsel's notice of appearance. Plaintiff further cites the expired deadline by which to amend the pleadings. She argues Smith has not cited any new facts or recently-obtained evidence to justify the delay in moving to add this counterclaim. Indeed, the Court agrees the proposed counterclaim is grounded in the idea that the filing of the Complaint itself is an abuse of process. However, "[o]rdinarily, delay alone, does not justify denial of leave to amend." *Morse v. McWhorter*, 290 F.3d 795, 800 (6th Cir. 2002); *see also Tefft v. Seward*, 689 F.2d 637, 639 n. 2 (6th Cir.1982) ("Delay that is neither intended to harass nor causes any ascertainable prejudice is

6

not a permissible reason, in and of itself to disallow an amendment of a pleading."). At the time of Smith's filing, some written discovery had been exchanged and Plaintiff's deposition was scheduled.[1] The Court does not find the delay so excessive that it has reached the point of being "undue, placing an unwarranted burden on the court, or . . . prejudicial, placing an unfair burden on the opposing party." *McWhorter*, 290 F.3d at 800 (citation modified).

*Bad Faith*

Next, Plaintiff contends Smith's proposed counterclaim "is made in bad faith as it is a further act of sexual harassment against Ms. Muchiarone in violation of Title VII[.]" (Doc. 15, at 6). But the case Plaintiff cites for this proposition, *EEOC v. Outback Steakhouse*, 75 F. Supp. 2d 756 (N.D. Ohio 1999), stands for the proposition that the filing of a lawsuit (or counterclaim) motivated by retaliation can serve as the basis for a Title VII claim. This does not speak to bad faith as a basis to deny leave to amend. That a claim brought in bad faith may serve as the basis for an independent Title VII claim does not elucidate whether Smith, here, brings his counterclaim in bad faith and should be denied leave to amend on that basis. And Plaintiff's arguments about disputed characterizations of the facts at issue do not persuade the Court that bad faith is a reason to deny amendment here.

*Futility*

Finally, Plaintiff contends leave to amend should be denied because Smith's proposed counterclaim is futile. Here, the Court agrees.

An amendment is "futile" if "the proposed amendment would not permit the complaint to survive a motion to dismiss." *Miller v. Calhoun Cnty.*, 408 F.3d 803, 817 (6th Cir. 2005); *Bergmoser v. Smart Document Sols., LLC*, 268 F. App'x 392, 396 (6th Cir. 2008) ("A motion to

---

1. In the time this motion has been pending, Plaintiff's deposition has been completed. *See* Doc. 17, at 1.

amend is 'futile' if it would not withstand a Rule 12(b)(6) motion to dismiss [for failure to state a claim on which relief can be granted].") (citing *Rose v. Hartford Underwriters Ins. Co.*, 203 F.3d 417, 42021 (6th Cir. 2000)).

Under Ohio law, an abuse of process claim has three elements: "(1) that a legal proceeding has been set in motion in proper form and with probable cause; (2) that the proceeding has been perverted to attempt to accomplish an ulterior purpose for which it was not designed; and (3) that direct damage has resulted from the wrongful use of process." *Robb v. Chagrin Lagoons Yacht Club, Inc.*, 75 Ohio St. 3d 264, 270 (1996) (quoting *Yaklevich v. Kemp, Schaeffer & Rowe Co., L.P.A.*, 68 Ohio St. 3d 294, 298 (1994)).

Plaintiff argues Smith has not plausibly alleged facts to satisfy the second element of an abuse of process claim. One Ohio court has described this second element as follows:

> The tort of abuse of process arises when one maliciously misuses legal process to accomplish some purpose not warranted by law. 1 American Jurisprudence 2d (1962) 250, Abuse of Process, Section 1. The key to the tort is the purpose for which process is used once it is issued. Prosser, *supra*, at 856, 129 S.Ct. 1937. Abuse of process does not lie for the wrongful bringing of an action, but for the improper use, or "abuse," of process. See, *e.g.*, *Hauser v. Bartow* (1937), 273 N.Y. 370, 7 N.E.2d 268.
>
> To make a case of abuse of process a claimant must show that one used process with an "ulterior motive," as the gist of offense is found in the manner in which process is used. *Hauser, supra*, at 373–374, 7 N.E.2d at 269. There must also be shown a further act in the use of process not proper in the regular conduct of the proceeding. Prosser, *supra*, at 857, 129 S.Ct. 1937. Thus, if one uses process properly, but with a malicious motive, there is no abuse of process, though a claim for malicious prosecution may lie. (See *infra*.) In a claim for abuse of process:
>
> "'* * * The tortious character of the defendant's conduct consists of his attempts to employ a legitimate process for a legitimate purpose in an improper manner, and this point must be clearly shown by the plaintiff to entitle him to maintain his action.'" (Citation omitted.) *Hauser, supra*, at 374, 7 N.E.2d at 269.

*Clermont Envt'l Reclamation Co. v. Hancock*, 16 Ohio App. 3d 9, 11 (Ohio Ct. App. 1984).

"The improper purpose usually takes the form of coercion to obtain a collateral advantage, not properly involved in the proceeding itself, such as the surrender of property or the payment of money, by the use of the process as a threat or a club . . . . Simply, abuse of process occurs where someone attempts to achieve through use of the court that which the court is itself powerless to order." *Robb*, 75 Ohio St. 3d at 271 (citation modified).

Thus, courts have explained, "[i]nitiating a lawsuit, by itself, is not an abuse of process." *Yona Inv. Grp., LLC v. Revilo's, LLC*, 2020 WL 7055727, at *4 (N.D. Ohio) (citing *Hauser v. Bartow*, 273 N.Y. 370, 374 (N.Y. Ct. App. 1937) ("Every one has a right to use the machinery of the law, and bad motive does not defeat that right.")). A "further act in the use of process not proper in the regular conduct of the proceeding" is required. *Clermont*, 16 Ohio App. 3d at 11; *see also Yona Inv. Grp., LLC*, 2020 WL 7055727, at *4; *Moore v. Feldman*, 2017 WL 1063466, at *2 (S.D. Ohio) ("Abuse of process is designed to remedy the misuse or exploitation of the legal process after a party has properly initiated a lawsuit with probable cause.") (citing *Hershey v. Edelman*, 932 N.E.2d 386, 411 (Ohio Ct. App. 2010)). "It follows that 'if one uses process properly, but with a malicious motive, there is no abuse of process.'" *Moore*, 2017 WL 1063466, at *4 (quoting *Gliatta v. Tectum, Inc.*, 211 F. Supp. 2d 992, 1010 (S.D. Ohio 2002)).

Smith does not respond to the above caselaw, cited by Plaintiff, regarding the second element of his claim, but in reply simply states that "it cannot be said that Principal Smith would not be able to prove any set of facts that would entitle him to the relief requested." (Doc. 16, at 6). He does not point to where his proposed counterclaim plausibly alleges facts to support the element "that the proceeding has been perverted to attempt to accomplish an ulterior purpose for which it was not designed[,]" *Robb*, 75 Ohio St. 3d at 270, but instead attacks the viability of Plaintiff's own claims, *see* Doc. 16, at 3-5.

9

The proposed counterclaim alleges, *inter alia*:

31. Plaintiff is misusing the process in this case for ulterior purposes, including but not limited to:

> a. Attempting to wrongfully coerce Defendant Smith's employer to punish him, to cost him his job, to diminish his job position and/or benefits;
>
> b. obtaining revenge against Defendant Smith by publicly humiliating him;
>
> c. diminishing Defendant Smith's resources through amongst other means causing him unwarranted legal fees, costs and expenses;
>
> d. wrongfully, negatively, and permanently diminishing Defendant Smith's reputation with his employer, his students, his co-employees, friends and family;
>
> e. wrongfully causing Defendant Smith unwarranted emotional distress, distraction from his job duties, suspicion and concern at his place of employment[.]

(Doc. 14-1, at 5). Although Smith certainly alleges Plaintiff has a malicious motive and intent to cause financial, emotional, and professional harm in bringing this case, this is insufficient. *See Moore*, 2017 WL 1063466, at *4. And Smith does not allege any "further act" Plaintiff has undertaken "in the use of process not proper in the regular conduct of the proceeding." *Clermont*, 16 Ohio App. 3d at 11. As such, the counterclaim fails to allege facts supporting the second element of an abuse of process claim. *See Cincinnati Dev. III, LLC v. Cincinnati Terrace Plaza, LLC*, 2020 WL 12625576, at *2 (S.D. Ohio) (denying leave to amend to add counterclaim for abuse of process because "Defendant CTA d[id] not articulate any fact or facts indicating the improper use of process for anything ulterior or collateral to th[e] lawsuit, [so] Defendant CTA's allegations [we]re insufficient to state a plausible abuse of process counterclaim against Plaintiff, and amendment would be futile."); *Yona Inv. Grp., LLC*, 2020 WL 7055727, at *4 (dismissing counterclaim on 12(b)(6) standard where the defendant "allege[d] Plaintiff [was] trying to exert

10

FURTHER ORDERED that the Amended Joint Motion to Extend Discovery Cut-Off Date as to Liability (Doc. 18) be and the same hereby is, GRANTED. The liability discovery deadline in this case is reset for **September 9, 2025,** and the dispositive motion deadline is reset for **October 21, 2025**.

     s/ *James R. Knepp II*
     UNITED STATES DISTRICT JUDGE

Dated: July 21, 2025